UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JARROD D. NICHOLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:03-cv-1005-DFH-TAB |
| | ) |
| ACUITY LIGHTING GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff Jarrod Nicholas brought this suit against his former employer, Acuity Lighting Group, Inc., alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* After a trial on Nicholas's claim, a jury returned a verdict in favor of the defendant on March 8, 2006, and the court entered final judgment on March 10, 2006. Defendant has filed a motion for an award of attorney fees and costs. For the reasons explained below, the court denies defendant's motion for attorney fees and grants the motion for costs in the amount of $2,215.63.

I.   *Attorney Fees*

Defendant seeks an award of costs and fees pursuant to the ADA's fee-shifting provision, 42 U.S.C. § 12205, which provides:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

Fees should be awarded pursuant to this provision against a plaintiff only if he has pursued claims that are frivolous, unreasonable, without foundation, or pursued in bad faith. *Adkins v. Briggs & Stratton Corp.*, 159 F.3d 306, 307 (7th Cir. 1998) (applying the higher standard of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), to prevailing defendant's claim for fees under ADA).

Defendant has argued that both plaintiff and his counsel should have recognized that plaintiff did not have evidence sufficient to convince a reasonable jury that plaintiff was a "qualified individual with a disability." To be considered a person with a disability within the meaning of the ADA, a person must show that he is substantially limited in a major life activity. See 42 U.S.C. § 12102(2) (definition of "disability"). At trial plaintiff argued, consistent with the EEOC regulations interpreting the ADA, that he was substantially limited in the major life activity of working. The regulations provide in relevant part that to be substantially limited in the major life activity of working, a person must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I); *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F. 3d 719, 725 (7th Cir. 1998).

Defendant has built its motion on one key answer given by plaintiff's vocational expert Mike Blankenship in his trial testimony. After Blankenship had testified on direct examination about the extensive restrictions on Nicholas's ability to continue working in manufacturing jobs, defense counsel questioned him about the severity of Nicholas's restrictions:

> Q. Sure. When we look at the restrictions that Mr. Nicholas was under, in your view it's relatively low level rather than being a substantial limitation, right?
>
> A. Yes.

Seizing on this testimony alone, defendant has characterized Blankenship's testimony as an "unequivocal declaration that [Nicholas] suffered no substantial limitation." Def. Br. at 5.

That argument oversimplifies Blankenship's testimony, though it might have persuaded the jury. When questioned by plaintiff's counsel regarding Nicholas's limits in performing manufacturing jobs outside of the one he had previously held with the defendant, Blankenship testified as follows:

> Q. Other jobs, how about in the manufacturing, in the same field that he was?
>
> A. I don't believe there would be other jobs that could be performed without some adjustment to the way the jobs are commonly performed through the Department of Labor.
>
> Q. Are you saying to do . . . anything in manufacturing he would require some accommodation?
>
> A. I believe he would, yes.

Blankenship further testified on the extent to which the restrictions imposed on Nicholas – a twenty-pound lifting restriction and the requirement that he be able to sit or stand as needed – limited his ability to perform work:

> Q. As a vocational matter, what impact in general have the permanent restrictions [to] sit or stand and [lift no more than] 20 pounds had on his low vocational opportunities?
>
> A. The 20-pound limitation reduces him to only sedentary or light classifications of work. The sit or stand option really really reduces the opportunities within sedentary and light when those limitations are related to the need of the person or an at will type of choice of sitting or standing rather than one dictated by the job function.
>
> Q. With regard to the Lafayette area or zone, did you identify a world of or universe of total jobs in that area?
>
> A. Well, yes, I had the – I had the database for the total jobs, as I mentioned, [in ]2003. As we've talked today and as I've talked at my deposition, the reduction is a huge number. I think I had stated – I'm not sure without looking – [but] five to seven percent of the jobs might remain.
>
> Q. Five to seven?
>
> A. Yes, sir.

On cross-examination, defendant later obtained the answer quoted above that Nicholas had a "relatively low level" of restrictions rather than "a substantial limitation."

In light of Blankenship's testimony that Nicholas was not capable of performing any manufacturing jobs without an accommodation and that his limitations rendered him capable of performing only five to seven percent of manufacturing jobs in the Lafayette area, a reasonable jury could have concluded

that Nicholas was significantly restricted in performing either a class of jobs or a broad range of jobs in various classes in comparison to the average person, the level of limitation that at least arguably amounts to a substantial limitation in working under 29 C.F.R. § 1630.2(j). Defendant's argument that Blankenship did not perform a specific comparison analysis does not undermine this point. The dramatic reduction in working capacity described by Blankenship, particularly when considered in conjunction with Nicholas's own testimony about the limits caused by his impairment, was sufficient to have allowed a jury to infer that Nicholas's limits rose to the level of a "substantial impairment" within the regulations. In fact, Blankenship's testimony about the extent to which Nicholas's limitations would restrict his ability to perform manufacturing jobs in the local region is precisely the sort of testimony contemplated by the EEOC regulations as at least one way of showing significant restrictions in the ability to perform either a class of jobs or a broad range of jobs in various classes. See 29 C.F.R. § 1630.2(j)(3); see also *Emerson v. Northern States Power Co.*, 256 F.3d 506, 512 (7th Cir. 2001) (employee raised genuine issue of fact where vocational expert testified her impairment foreclosed her from 47 percent of all occupations); *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001) (discussing use of similar vocational data and declining to impose per se rule requiring quantitative evidence of precise characteristics of local job market).

The fact that Blankenship also offered testimony from which a jury might, and in this case apparently did, infer that Nicholas was not substantially limited

does not support a fee award under § 12205, let alone require one. Fees may be awarded to a prevailing defendant in an employment discrimination case only when the plaintiff has pursued a claim that is "unreasonable, frivolous, meritless, or vexatious." *Christiansburg Garment Co.*, 434 U.S. at 421, quoting *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir. 1976). In *Christiansburg Garment*, the United States Supreme Court took care to emphasize that the term "meritless" must mean more than that the plaintiff was not successful in obtaining a jury verdict in his favor. In addressing whether a fee award is appropriate, the Court explained, district courts should use caution:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment*, 434 U.S. at 421-22. Nicholas presented evidence at trial sufficient to support the inference that he was substantially limited in the major life activity of working within the meaning of the ADA. Accordingly, defendant's motion for attorney fees pursuant to § 12205 is denied.

Defendant also asserts that plaintiff's attorney should be liable to defendant for expenses, costs, and attorneys' fees pursuant to 28 U.S.C. § 1927, which

allows for such an award where the losing party has "unreasonably and vexatiously" prolonged litigation. The Seventh Circuit has explained that such an award is warranted against an attorney who has pursued litigation in an "objectively unreasonable manner," such as by taking part in "serious and studied disregard for the orderly process of justice," or by pursing a claim lacking a plausible legal or factual basis. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119-20 (7th Cir. 1994) (reversing imposition of sanctions under § 1927), quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988); *Webster v. Methodist Occupational Health Centers, Inc.*, 141 F.3d 1236, 1239 (7th Cir. 1998) (dismissing plaintiff's appeal in an ADA case but denying request for sanctions; although the appeal was "without merit, it has not crossed the line of unreasonableness and vexatiousness under § 1927"). This standard does not appear to the court to differ significantly from the *Christiansburg Garment* approach applied above with respect to 42 U.S.C. § 12205. Accordingly, for the same reasons, defendant's request under § 1927 is also denied.

II.   *Costs*

Defendant also seeks an award of litigation costs from plaintiff under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. Although district courts have broad discretion in determining whether costs are reasonably necessary, Rule 54(d) establishes a "strong presumption" that a prevailing party will recover costs. *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 945 (7th Cir. 1997). Section 1920 sets forth the categories of recoverable costs.

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-43 (1987); *Kohus v. Toys "R" Us, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002). The court must also ensure that the claimed costs are reasonable. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).

Defendant's initial bill of costs sought $6,444.83, which included charges for copying, several deposition transcripts, videographer services for the Herdman deposition, expert witness fees of defendant's expert Professor Bruce Jaffee and plaintiff's expert Blankenship, and mileage and witness fees for Paul Kaupisch. Docket No. 107. Plaintiff objected to defendant's cost requests relating to expert witnesses, the request for both transcription and videographer costs relating to witness Herdman's deposition, copying costs, and the fees for Kaupisch.

In response, defendant withdrew its request for expert witness costs under § 1920 relating to Professor Jaffee, which defendant indicated in its bill of costs were $3,117.50 (the combined cost of two invoices). See Def. Reply Br. at 7; Docket No. 107-2 (Ex. A to Bill of Costs). Defendant also withdrew its request for videography costs under § 1920 relating to Herdman's deposition, which defendant indicated in its bill of costs were $535.50.[1] See Def. Reply Br. at 6; Docket No. 107-2 (Ex. A to Def. Bill of Costs). At issue for the court's determination is whether defendant may recover the requested copying costs, the fee for

---

[1] Because the court has determined that an award of attorney fees is inappropriate in this case, the court need not consider defendant's argument that the videography and expert witness fees should be added to any attorney fee award. See Def. Reply Br. at 6-7.

Blankenship's deposition, and the costs for witness Kaupisch under Rule 54(d) and § 1920.

Defendant seeks $779.40 relating to copies made in this case. Section 1920(4) provides for the recovery of costs including "Fees for exemplification and copies of papers necessarily obtained for use in the case." Taxable copying costs under § 1920 therefore must have been reasonably necessary to the litigation. See generally *Weeks*, 126 F. 3d at 945 ("As long as there is statutory authority for allowing a particular item to be taxed as a cost, we will not overturn a district court's decision that the cost was necessary to the litigation or its determination of what amount is reasonable absent a showing of clear abuse of discretion."). The court looks to the defendant in this case, as the party seeking the challenged copy costs, to make some showing that the costs were reasonably necessary. See, *e.g.*, *Berryman v. Hofbauer*, 161 F.R.D. 341, 344-45 (E.D. Mich. 1995) (where defendant failed to respond to plaintiff's challenge to the full amount sought for copying costs, court awarded only those costs for which reasonable necessity was obvious), citing *Griffith v. Mt. Carmel Medical Center*, 157 F.R.D. 499, 502 (D. Kan. 1994).

In support of its copying cost requests, defendant cites *Young v. DaimlerChrysler Corp.*, 2004 WL 2538640 (S.D. Ind. 2004) (McKinney, C.J.). In *Young*, the prevailing plaintiff sought copying costs. The defendant objected, arguing that the plaintiff had failed to offer information showing that the copies were reasonably necessary. *Id.* at *4-*5. The court allowed the costs where the

plaintiff's attorney fee records contained information sufficient to show that the copies were reasonably necessary to trial preparation. *Id.*

In the present case, it is obvious that copying costs for defendant's trial exhibit binders for the parties, the court, and the jury were reasonably necessary. Defendant has indicated that the amount for this copying was $563.20. Apart from its general citation to *Young*, defendant has offered no other argument or additional evidence from which one might infer reasonable necessity relating to the additional copying fees. See Def. Reply at 5. Defendant has cited *Young*, but has not itself made the argument that its attorney billing records support with sufficient specificity its copying records such that the plaintiff or the court could determine reasonable necessity. A scan of defendant's records reveals that some of the dates indicated in the attorney billing records coincide with copying records, but it is not readily apparent that the copying indicated in the records was done in the process of the attorney preparation indicated. It is not the job of the court to comb the record in an effort to guess why the certain copies were made when defendant has not done so. Defendant is entitled to $563.20 in copying costs.

Plaintiff also challenged defendant's $50.43 in costs associated with witness Paul Kaupisch on the ground that Kaupisch is an employee of defendant. See Docket No. 112, Ex. 4. Defendant disputes this fact and has offered evidence of the costs incurred on its behalf. Plaintiff has not offered any additional evidence

on this score. Accordingly, the defendant is due the costs incurred in securing Kaupisch as a witness.

Finally, defendant is not entitled to the $400 expert witness fee charged by Blankenship for his deposition. Absent express statutory authority for shifting expert witness fees, such fees under Rule 54(d) and § 1920 are limited to the statutory $40 per day witness fee. *Crawford Fitting Co.*, 482 U.S. at 441-43, 445; *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002), citing 28 U.S.C. § 1821(b). Defendant has not come forward with authority that would treat differently the fees of an opposing party's expert witness for purposes of deposition, so the court applies the general rule and subtracts the $360 difference from defendant's fee request.

Based on the parties' submissions and the foregoing analysis, the following costs are warranted in this case in accordance with Rule 54 and § 1920: (1) $1,562.00 for deposition costs; (2) $40.00 for the Blankenship daily witness fee; (3) $50.43 for witness fees for Kaupisch; and (4) $563.20 in copying costs. The total amount of these costs is $2,215.63.

*Conclusion*

For the foregoing reasons, defendant's motion for attorney fees is hereby DENIED. Defendant's motion for costs is GRANTED in part. Plaintiff is hereby ordered to pay to the defendant costs in the amount of $2,215.63.

So ordered.

Date: August 1, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James E. Ayers
WERNLE RISTINE & AYERS
ayersj@wralaw.com

Sylvia Abra Bier
LOCKE REYNOLDS LLP
sbier@locke.com

John Hampton Daerr
LOCKE REYNOLDS LLP
jdaerr@locke.com

James D. Masur, II
LOCKE REYNOLDS LLP
jmasur@locke.com

Heather L. Wilson
LOCKE REYNOLDS LLP
hwilson@locke.com